Robinson, J.
These cases are in mandamus — one by M. M. Rose, John F. Nolan and William F. Mason, as the state liquor licensing board, to require the issue by the auditor of state of a warrant *105 on the treasurer of state for the payment of the complete pay roll of said board, some forty-seven persons, from the 26th day of May, 1919, to and including the 31st day of May, 1919; the other by M. M. Rose, a member of the state liquor licensing board, to compel the auditor of state to issue a warrant on the treasurer of state for the payment of the official salary of said M. M. Rose for said period.
These cases were heard together and involve the same question, viz.: Has the state liquor licensing board a legal existence since midnight of the 26th day of May, 1919?
By the Constitution of 1912 the legislature of Ohio was especially enjoined to enact license laws. Section 9, Article XV thereof, provides: “License to traffic in intoxicating liquors shall be granted in this state, and license laws operative throughout the state shall be passed.” In pursuance of that constitutional mandate, the legislature on April 18, 1913 (103 O. L., 216; Sections 1261-16 to 1261-73, General Code), passed an act entitled “An act to provide for license to traffic in intoxicating liquors and to further regulate the traffic therein;.to establish a state liquor licensing board and county liquor licensing boards; to define their powers and duties and to' amend sections 6065 and 6071, General Code of Ohio.”
A state liquor licensing board, consisting of three commissioners, was thereby created, and provision made that before entering upon the duties of his office “every licensing- commissioner * * * shall * * * take aij oath * * * to carry *106 into effect the letter and spirit of the liquor licensing system of this state.” Elaborate machinery for the carrying out of the license system was created, with “secretaries, clerks, examiners, inspectors, stenographers and other assistants.” The state was divided into “licensing districts,” each county in the state constituted a “licensing district,” and two commissioners were appointed in each district, “known as The............County Liquor Licensing Board,’ ” with the duties “to grant, issue, renew and transfer, as provided by law, all licenses for traffic in intoxicating liquors in the county wherein the board is situated; also to suspend or revoke, * * * all licenses granted or renewed in said county,” all subject to review by the state liquor licensing board. But no duties other than the putting in operation and the enforcement of the liquor license law were conferred by that act upon either the state or the county liquor licensing boards.
On April 18,-1913, Sections 6072, 6087, 6088, 6089 and 6091, General Code, were amended, conferring upon the inspectors the • duty “in addition to any other duties” to make investigations to secure the names of all persons, firms or corporations liable to the Dow-Aiken tax assessment and report same to the state liquor licensing board, and the duty was imposed upon the state liquor licensing board to certify to the auditor of state such names together with a description of the property in or upon which such traffic in intoxicating liquor is being or has been conducted, who in turn must certify same to the proper county auditor.
*107 On February 6, 1914, Section 6087, General Code, was amended, enlarging the powers of the inspectors, giving them the power to summon and compel the attendance of witnesses before them and the power to enter upon all premises for the purposes of examination.
This was the state of the law when present Section 9, Article XV of the Constitution, was adopted, which section is as follows:
“The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The General Assembly shall enact laws to make this provision effective. Nothing herein contained shall prevent the manufacture or sale of such liquors for medicinal, industrial, scientific, sacramental, or other non-beverage purposes.
“Schedule.
“If the proposed amendment be adopted, it shall become Section '9 of Article XV of the Constitution, and it shall take effect on the 27th day of May of the year following the date of the election at which it is adopted, at which time original sections 9 and 9a of Article XV of the Constitution and all statutes inconsistent with the foregoing amendment shall be repealed.”
That every duty upon the state liquor licensing board by the act of April 18,. 1913, was inconsistent with this section of the constitution is conceded.
But it is claimed upon the.part of the relators in the one case, and the relator in the other, because the legislature, in addition to the major duty of carrying out the provisions of the licens *108 ing system of the state and the enforcing of its observance by licensees, had conferred upon them by statute the additional duty and power to assist the various county auditors in the discharge of their duty in placing the Dow-Aiken assessment against the property of those engaged in the business of trafficking in intoxicating liquors without having complied with the liquor licensing pro-' visions, that therefore their existence as a state liquor licensing board should be continued. This contention is made upon the assumption that the provision for the Dow-Aiken system of taxing real estate where intoxicating liquors are sold as a beverage is not inconsistent with the constitutional prohibition of such sale.
Assuming, but not deciding, such contention to be correct, is it within the range of probability that the legislature would create this elaborate machinery for the purpose of aiding the respective county auditors in the discharge of a duty which it has just as forcefully enjoined upon them to perform?
Would anyone contend that if the constitution were' amended so as to repeal the requirement, “No person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury,” and at the same time repealing the statutory provisions requiring such indictment, that therefore the grand jury system would still be continued in force because perchance the law provides that the grand jury shall visit the county jail, examine its condition, inquire into the discipline and treatment of prisoners and report same to the court?
*109 There are few officers, boards or departments of the state that have not additional functions incidental to the carrying out of the purpose for which they were created. For instance, assessing officers in addition to the duty of seeing that property -is listed for taxation must upon request furnish to the board of agriculture such information as may be in their possession or may be obtained relative to agriculture. Yet if the legislature were to relieve such officers of all assessing duties, would it be claimed that the office of assessor continued to exist in every ward and precinct of the state for the purpose of furnishing information to the agricultural board ?
Having in mind the policy of the state as expressed by its adoption of present Section 9, Article XV of the Constitution, and the repugnancy of the licensing system to that policy, we believe that a • reasonable interpretation of that section and the schedule thereto repeals the statutes creating the state liquor licensing'board, that the incidental duty conferred upon it of assisting county auditors in listing for taxation property liable under the Dow-Aiken law, assuming that law not to have been repealed, does not operate to make its continued existence consistent with constitutional prohibition, and we therefore hold the board ceased to exist upon the taking effect of said section.'

Demurrers sustained and writs refused.

Nichols, C. J., Jones, Matthias, Johnson Donahue and Wanamakee, JJ., concur.